```
                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MARYLAND
```

                                  :
CHARLES LUNN, a minor, et al.
                                  :

     v.                           :   Civil Action No. DKC 2005-2363

                                  :
JERRY D. WEAST, et al.
                                  :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case brought under the Individuals with Disabilities Education Act are (1) the motion of Plaintiffs Charles Lenny Lunn and Lorie Peters Lauthier, for summary judgment; and (2) the cross-motion of Defendants Jerry D. Weast and the Montgomery County Board of Education for summary judgment.[1] The issues are briefed fully and the court has reviewed the administrative record. The court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the court denies Plaintiffs' motion for summary judgment, and grants Defendants' cross-motion for summary judgment.

I.   **The Individuals with Disabilities Education Act**

The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., and accompanying regulations, 34 C.F.R. § 300 et seq., require all states that receive federal funds for education to provide each child between the ages of three and

---

[1] Defendant Jerry Weast is superintendent of Montgomery County Public Schools.

twenty-one, who has a disability, with a free and appropriate public education ("FAPE"). 20 U.S.C. § 1412(a)(1)(A). Maryland's regulations governing the provision of a FAPE to children with disabilities in accordance with the IDEA are found at Md. Code Regs. 13A.05.01.

The FAPE guaranteed by the IDEA must provide a disabled child with meaningful access to the educational process. *See Bd. of Educ. of the Henrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176, 192 (1982). The FAPE must be reasonably calculated to confer "some educational benefit" on the disabled child. *Id.* at 207. The benefit must also be provided in the least restrictive environment appropriate to the child's needs, with the disabled child participating to the "maximum extent appropriate" in the same activities as his or her non-disabled peers. 20 U.S.C. § 1412(a)(5)(A); *see also* 34 C.F.R. § 300.550. The IDEA does not require that a school district provide a disabled child with the best possible education, *Rowley,* 458 U.S. at 192, or that the education maximize each child's potential, s*ee Hartmann v. Loudoun County Bd. of Educ.,* 118 F.3d 996, 1001 (4th Cir. 1997), *cert. denied*, 522 U.S. 1046 (1998). The benefit conferred, however, must amount to more than trivial progress. *See Reusch v. Fountain,* 872 F.Supp. 1421, 1425 (D.Md. 1994) (*Rowley's* "'some educational benefit' prong will not be met by the provision of de minimis,

trivial learning opportunities.") (citing *Hall v. Vance County Bd. of Educ.*, 774 F.2d 629, 635 (4th Cir. 1985)).

To assure delivery of a FAPE, the IDEA requires a school district to provide an appropriate Individualized Education Program ("IEP") for each child determined to be learning disabled. 20 U.S.C. § 1414(d). That IEP is formulated by a team ("IEP Team") consisting of the parents or guardian of the child, a representative of the school district, the child's regular and special education teachers, an individual who can interpret results of evaluations of the child, and, when appropriate, the child himself or herself. 20 U.S.C. § 1414(d)(1)(B); Md. Code Regs. 13A.05.01.07(A). The IEP must state the student's current educational status, annual goals for the student's education, the special educational services and other aids that will be provided to the child to meet those goals, and the extent to which the child will be "mainstreamed," i.e., spend time in regular school environments with non-disabled students. 20 U.S.C. § 1414(d)(1)(A).

The IDEA provides a series of procedural safeguards "designed to ensure that the parents or guardian of a child with a disability are both notified of decisions affecting their child and given an opportunity to object to these decisions." *MM ex rel. DM v. Sch. Dist. of Greenville County,* 303 F.3d 523, 527 (4th Cir. 2002) (internal quotation marks and citation omitted); *see also* 20 U.S.C.

§ 1415. Among those safeguards, a parent must be provided prior written notice of a decision to propose or change the educational placement of a student. Md. Code Regs. 13A.05.01.13(B). A parent may also request a meeting at any time to review and, as appropriate, revise the student's IEP. Md. Code Regs. 13A.05.01.08(B)(3).

If the parents are not satisfied with the IEP, they may present a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child." 20 U.S.C. § 1415(b)(6). After such a complaint has been received, the parents also are entitled to request a due process hearing conducted by the state or local educational agency. 20 U.S.C. § 1415(f). In Maryland, the Maryland Office of Administrative Hearings conducts the due process hearing. Md. Code Ann., Educ. § 8-413; Md. Code Regs. 13A.05.01.15(C)(1). Any party can then appeal the administrative ruling to federal or state court. Md. Code Ann., Educ. § 8-413(h).

When a FAPE is not provided to a disabled student, the student's parent may place the child in a private school and seek reimbursement for the cost of the private school. *See Sch. Comm. of Burlington v. Dep't of Ed.*, 471 U.S. 359, 369-70 (1985). In order to be entitled to reimbursement for unilateral private

placement, certain conditions must be met.  Title 20, § 1412(a)(10)(C)(ii) states:

> If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary school or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a [FAPE] available to the child in a timely manner prior to that enrollment.

Moreover, reimbursement can be reduced or denied if:

> (aa) at the most recent IEP meeting that the parents attended prior to removal of the child from the public school, the parents did not inform the IEP Team that they were rejecting the placement proposed by the public agency to provide a [FAPE] to their child, including stating their concerns and their intent to enroll their child in a private school at public expense; or
>
> (bb) 10 business days (including any holidays that occur on a business day) prior to the removal of the child from the public school, the parents did not give written notice to the public agency of the information described in division (aa).

20 U.S.C. § 1412(a)(10)(C)(iii)(I).[2]  Finally, in order to receive reimbursement, the private education services obtained by the parents must be appropriate to meet the child's needs.  *Sch. Comm. of Burlington,* 471 U.S. at 370.

---

[2] Reimbursement can also be reduced or denied if, prior to removal of the child, the school notifies the parents of its intent to evaluate the child and the parent does not make the child available for such an evaluation, or upon a judicial finding of unreasonableness with respect to actions taken by the parents.  20 U.S.C. § 1412(a)(10)(C)(iii)(I), (II).

**II.  Background**

The following facts are undisputed.  Plaintiff Charles Lenny Lunn ("Lenny") was born in London, England, on June 2, 1990.  He and his mother, Lorie Peters Lauthier, lived overseas until August 2004.  In 2001, Lenny was diagnosed with chromosomal deletion 22q13.2, a rare condition that impacts his verbal and expressive skills and causes attention and behavioral problems.  Lenny also has difficulty with fine motor skills and with following directions.  He is antisocial and sometimes aggressive, and can never be left alone.  As a result of his condition, Lenny is almost non-verbal; he knows approximately fifty to eighty words.

In February 2004, when Ms. Lauthier became aware that she was going to move to Montgomery County, Maryland, she contacted Montgomery County Public Schools ("MCPS") regarding recommendations for appropriate schools for Lenny.[3]  In addition, through Dr. Sheila Iseman, an educational consultant, Ms. Lauthier sent MCPS Lenny's most recent evaluations and assessments.  At that time, MCPS told Ms. Lauthier that it could not begin the process of determining a proper placement for Lenny until Ms. Lauthier and Lenny obtained residency in Montgomery County.

In June 2004, prior to obtaining residency in Montgomery County, Ms. Lauthier applied to the Ivymount school, a private

---

[3] Ms. Lauthier testified that she did not speak personally with MCPS, but that her educational consultant, Dr. Sheila Iseman, contacted the school system.  (Paper 3, Tr. at 105).

school for children with disabilities, for the 2004-2005 school year.  Ivymount accepted Lenny for attendance on June 14, 2004.  On August 12, 2004, Ms. Lauthier signed an enrollment contract with Ivymount, obligating her to pay annual tuition in the amount of $36,511.00, regardless of whether Lenny withdrew at any time during the school year.  At the time she signed the contract, Ms. Lauthier paid a $3,670.00 deposit.

Ms. Lauthier's lease on a house in Montgomery County commenced on August 15, 2004.  On August 17, 2004, Ms. Lauthier submitted information through the MCPS International Student Admissions Office in order to obtain placement for Lenny in MCPS.  MCPS conducted an IEP meeting on August 27, 2004, three days before school began for the 2004-2005 school year.  At the meeting, the IEP team discussed assessing Lenny.[4]  The team also discussed Lenny's disabilities, and reviewed the assessments and evaluations that Ms. Lauthier provided.  Based on the information the IEP team had, it recommended the Cabin John Middle School Community Based

---

[4] Ms. Lauthier's testimony on this point is conflicting.  Ms. Lauthier first testified that, during the IEP meeting, no MCPS official brought up the subject of assessing Lenny. (Paper 3, Tr. at 60).  Ms. Lauthier later testified on cross-examination that the IEP team "said they wanted to test Lenny" and asked her if she would consent to the testing, and that "they talked about doing assessments."  *Id.* at 118.  The administrative law judge ("ALJ") at the due process hearing, Susan A. Sinrod, found that the IEP team had discussed assessing Lenny. (Paper 3, ALJ decision at 6).  This court accepts that factual determination.  *See Justin G. ex rel. Gene R. v. Bd. of Educ.,* 148 F.Supp.2d 576, 588 (D.Md. 2001).

7

Program as the placement for Lenny.  Cabin John Middle School is part of the MCPS system.

Ms. Lauthier did not sign the IEP because she wanted to meet the director of the Cabin John program and to observe the program prior to sending Lenny there.  At the time of the IEP meeting, Ms. Lauthier thought that the Cabin John program sounded appropriate for Lenny.  (Paper 3, Tr. at 59, 120).  Lenny began attending Ivymount at the start of the 2004-2005 school year.  Ms. Lauthier visited the Cabin John Middle School on September 24, 2004, approximately three weeks after the school year began.  Upon visiting the Cabin John program, Ms. Lauthier determined that the program was inappropriate for Lenny's needs.  Ms. Lauthier felt that Lenny needed more extensive speech and physical therapy than the program offered.  Following her visit, Ms. Lauthier called Steven Neff, special education supervisor in the Division of School Based Special Education Services for MCPS, and informed him that she did not feel that the Cabin John program was the proper placement for Lenny.  Ms. Lauthier also informed Mr. Neff that Lenny already was attending Ivymount.  Apparently no further contact occurred between Plaintiffs and Defendants concerning placement for the 2004-2005 school year.

On April 26, 2005, Ms. Lauthier requested a due process hearing to seek reimbursement for Lenny's placement at Ivymount for the 2004-2005 school year.  The due process hearing was held before

ALJ Sinrod on May 26, 2005. During the hearing, MCPS filed a motion to dismiss or for summary decision. At the end of the hearing, Ms. Lauthier, through her attorney, requested the opportunity to submit a brief regarding issues presented in MCPS's motion. The ALJ permitted the submission, and Ms. Lauthier filed a brief prior to closing arguments. On June 1, 2005, the parties, by telephone, both argued their position on the motion and made closing arguments.

On June 24, 2005, the ALJ issued an opinion, granting MCPS's motion for summary decision and denying Ms. Lauthier's request for reimbursement. In her opinion, the ALJ identified two issues for consideration: (1) whether summary decision should be granted in favor of MCPS because Lenny never received special education services under the authority of a public agency; and (2) whether summary decision should be granted in favor of MCPS because Ms. Lauthier failed to give notice to MCPS of her rejection of the placement, and of her intent to place Lenny at Ivymount at MCPS expense. The ALJ found that because Lenny had never attended any public school and had never received special education and related services in a public school, pursuant to the plain language of 20 U.S.C. § 1412(a)(10)(C)(ii), Ms. Lauthier was not entitled to reimbursement for the 2004-2005 school year at Ivymount. (Paper 3, ALJ decision at 20). The ALJ stated that it was unnecessary for her to reach the second issue of whether Ms. Lauthier gave proper

notice of her rejection of the MCPS placement because Ms. Lauthier "never gave MCPS the opportunity to provide services to the Student." *Id*. at 17.  The ALJ went on to explain: "There was actually nothing for [Ms. Lauthier] to give notice of, as she sent the Student to Ivymount before making a determination as to the appropriateness or inappropriateness of the MCPS placement." *Id*. The ALJ reasoned that the purpose of both the prerequisite of having received special education services and the notice requirement is to allow the school the opportunity to provide the child with a FAPE, before the parent unilaterally places the child in private school and seeks reimbursement for such placement. *Id*. at 17-19.

Lenny and his mother appealed to this court. Here, they seek: (1) a declaration that Defendants violated Plaintiffs' rights under the law; (2) injunctive relief ordering Defendants to reimburse Plaintiffs for the tuition expenses for the 2004-2005 school year at Ivymount; (3) a declaration that Ivymount is Lenny's current educational placement under the IDEA; (4) attorneys' fees and costs; and (5) any other relief the court deems just. Defendants, in their cross-motion for summary judgment, seek dismissal of the complaint and attorneys' fees and costs.

**III. Motions for Summary Judgment**

**A.  Standard of Review**

In *MM ex. rel. DM,* the United States Court of Appeals for the Fourth Circuit stated the standard of review for motions for summary judgment in IDEA cases:

> 0In a judicial proceeding under the IDEA, a reviewing court is obliged to conduct a modified *de novo* review, giving "due weight" to the underlying administrative proceedings. In such a situation, findings of fact made in administrative proceedings are considered to be prima facie correct, and if a reviewing court fails to adhere to them, it is obliged to explain why.  The court is not, however, to substitute [its] own notions of sound educational policy for those of local school authorities . . . .

303 F.3d at 530-31 (citations omitted).  General standards of review for summary judgment motions also apply in IDEA cases, as illustrated in *Bd. of Educ. of Frederick County v. I.S. ex rel. Summers,* 325 F.Supp.2d 565, 578 (D.Md. 2004):

> In addition, the Court's analysis is shaped by the mandate of Rule 56(c) of the Federal Rules of Civil Procedure that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "When the moving party has met its responsibility of identifying the basis for its motion, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *White v. Rockingham Radiologists, Ltd.,* 820 F.2d 98, 101 (4th Cir. 1987) (quoting *Celotex Corp. v.*

>*Catrett*, 477 U.S. 317, 324 (1986); Fed. R. Civ. P. 56(e)). The Court's function is limited to determining whether sufficient evidence supporting a claimed factual dispute exists to warrant resolution of the matter at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In that context, a court is obligated to consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Where, as here, cross-motions for summary judgment are filed, a court must "evaluate each party's motion on its own merits, taking care [in each instance] to draw all reasonable inferences against the party whose motion is under consideration." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987).

Plaintiffs in IDEA cases face an uphill battle for several reasons. First, just as Plaintiffs were required to carry the burden of proof in the administrative hearing, *Schaffer ex rel. Schaffer v. Weast*, __ U.S. __, 126 S.Ct. 528, 537 (2005), Plaintiffs also must carry that burden in this court, *I.S. ex rel. Summers*, 325 F.Supp.2d at 27 ("As the party challenging the administrative findings, Plaintiffs bear the burden of proof of establishing a violation of the IDEA."); *Cavanagh v. Grasmick*, 75 F.Supp.2d 446, 457 (D.Md. 1999)). Second, "[i]f the administrative findings were made in a regular manner and have evidentiary support, they are to be considered *prima facie* correct." *Cavanagh*, 75 F.Supp.2d at 457 (citing *Doyle v. Arlington County Sch. Bd.*, 953 F.2d 100, 103 (4th Cir. 1991)). Moreover, in according "due weight" to the findings of the ALJ, this court owes deference to the ALJ's determinations of the credibility of witnesses. "[T]he fact-finder, who has the advantage of hearing the witnesses, is in

the best position to assess credibility." *Justin G.*, 148 F.Supp.2d at 588 (quoting *Bd. of Educ. of Montgomery County v. Hunter ex rel. Hunter,* 84 F.Supp.2d 702, 706 (D.Md. 2000)); *see also Doyle,* 953 F.2d at 104.

**B.   Analysis**

The ALJ determined, and this court agrees, that because Lenny never received public special education services, Plaintiffs are not eligible for reimbursement for Ivymount.  In 1997 the IDEA was amended to, *inter alia*, clarify the circumstances under which parents are entitled to receive reimbursement for private school tuition.  Congress added the provision providing for reimbursement for unilateral placement where the student had "previously received special education and related services under the authority of a public agency."  20 U.S.C. § 1412(a)(10)(C)(ii).  The requirement that a child must have previously received public special education services also is included in the accompanying regulation, 34 C.F.R. § 300.403(c), and finds support in the legislative history, which states:

> Section [1412] also specifies that parents may be reimbursed for the cost of a private educational placement under certain conditions (i.e., when a due process hearing officer or judge determines that a public agency had not made a free appropriate public education available to the child, in a timely manner, prior to the parents enrolling the child in that placement without the public agency's consent). *Previously, the child must have received special education and related services under the authority of a public agency.*

H.R.Rep.No. 105-95, at 90 (1997) (emphasis added).  Moreover, the corresponding Maryland regulation also is consistent with the federal statutory requirement.  *See* Md. Code Regs.13A.05.01.16 B(3)(d)(i) (stating that a parent may be reimbursed for the costs of private school placement *if*, among other things, the student "had previously received special education and related services under the authority of the local school system").

Although the Fourth Circuit has not yet applied this aspect of the 1997 amendments to the IDEA, multiple courts have held that pursuant to 20 U.S.C. § 1412(a)(10)(C)(ii), reimbursement is barred where a student has not previously received public special education and related services.  In a relatively recent case, *Balt. City Bd. of Sch. Comm'rs v. Taylorch*, 395 F.Supp.2d 246, 249 (D.Md. 2005), Judge Motz of this district considered whether, in light of the 1997 amendments to the IDEA, the parents of a child who had never received special education and related services under the authority of a public agency were entitled to reimbursement for tuition after they unilaterally placed their child in private school.  Judge Motz concluded:  "[T]he statutory text commands (and permits) only one result: [The child's] parents are not eligible for tuition reimbursement under the IDEA."  *See also Greenland Sch. Dist. v. Amy N.*, 358 F.3d 150, 160 (1st Cir. 2004) (concluding that a student's receipt of special education services from the public school system is a "threshold requirement" to receiving

14

reimbursement for private school tuition); *Carmel Cent. Sch. Dist. v. V.P. ex rel. G.P.*, 373 F.Supp.2d 402, 414-15 (S.D.N.Y. 2005) (finding that parents were ineligible to receive tuition reimbursement where the child never received special education services and the parents did not give the school "a meaningful opportunity to consider whether [the child] could receive a FAPE before deciding to re-enroll her" at the private school).

There are, however, cases reaching contrary results. For example, in *Justin G.*, 148 F.Supp.2d at 587, the court held that the parents of a child, who was diagnosed with a disability before he reached school age and who had never enrolled in public school, were not barred from seeking reimbursement for private school. The court reasoned that "such a construction of the IDEA would produce the absurd result of barring children from receiving a FAPE because their disabilities were detected before they reached school age" and "would also place parents of such children in the untenable position of acquiescing to an inappropriate placement in order to preserve their right to reimbursement." *See also M.M. ex rel. C.M. v. Sch. Bd. of Miami-Dade County*, 437 F.3d 1085, 1098-99 (11th Cir. 2006) (stating, in dicta, that "parents are not required in all cases to first enroll their child in public school pursuant to an inadequate IEP in order to preserve their right to reimbursement" but acknowledging that the child had met the statutory requirement because the child had received special education and related services under the authority of a public agency); *E.W. v. Sch. Bd.*

15

*of Miami-Dade County*, 307 F.Supp.2d 1363, 1369-70 (S.D.Fla. 2004) (noting that there was a question of material fact as to whether the child received special education and related services under the authority of a public agency but stating that the parents of a child who had never attended public school "should not be barred from seeking tuition reimbursement . . . for the same reasons as those set forth in *Justin G.*").

This court cannot ignore the plain language of the statute, which mandates that prior receipt of special education and related services is a prerequisite to reimbursement.  In addition, the legislative history as well as federal and state regulations are all in accordance with this construction.  Moreover, this interpretation furthers the purpose of the notice provision, 20 U.S.C. § 1412(a)(10)(C)(iii)(I), which allows the reduction or complete denial of reimbursement where a parent places the child in private school without proper notice to public school officials. The intent is that prior to placing a child in private school, parents must give the public school system an opportunity to provide a FAPE to a child and, where the parent disagrees with the type or level of services provided, to revisit the plan and make adaptations where necessary.  Whether, as Plaintiffs argue, this statutory interpretation may lead to illogical results when applied to hypothetical sets of facts not at issue here is irrelevant.

Congress has spoken clearly, and this court must apply the law as it is written.[5]

Lenny was born in England and resided in Europe for his entire life until 2004, when he moved to the United States. Ms. Lauthier applied to Ivymount in June 2004 and formally enrolled her son there on August 12, 2004. She signed a contract requiring her to pay a full year's tuition in the amount of $36,511.00, regardless of whether Lenny withdrew from the school during the year. All of these actions were taken before Ms. Lauthier had even met with MCPS officials at the IEP meeting. There is no question that Lenny has never received special education and related services under the authority of a public agency. Accordingly, Plaintiffs are not entitled to receive reimbursement for the unilateral decision to place Lenny at Ivymount.[6]

Because Plaintiffs, as a matter of law, are not eligible for reimbursement, the subsidiary aspects of the complaint (e.g., the alleged procedural violations in the IEP, the adequacy of MCPS's proposed placement) appear to be moot.[7] However, Plaintiffs are

---

[5] In light of the facts presented in this case, the court finds the decision in *Taylorch*, 395 F.Supp.2d at 249, to be more persuasive than the decision in *Justin G.*, 148 F.Supp.2d at 587.

[6] The court need not base its decision on the notice issue, however it is highly unlikely that notice was proper. Ms. Lauthier enrolled Lenny at Ivymount prior to the IEP meeting and then waited almost a month before either expressing dissatisfaction with the proposed placement or telling MCPS of her intent to send Lenny to private school and that Lenny was attending Ivymount.

[7] The due process hearing request, as well as the ALJ's
(continued...)

requested to notify the court promptly whether this conclusion is correct.  If the court does not hear from Plaintiffs within this ten days, final judgment will be entered in favor of Defendants and the case will be closed.

## IV. Attorneys' Fees

In their cross-motion for summary judgment, Defendants request that this court grant attorneys' fees and costs.  In relevant part, 20 U.S.C. § 1415(i)(3)(B) provides that a court, in its discretion, may grant attorneys' fees:

> (II) to a prevailing party who is a State educational agency or local educational agency against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation, or against the attorney of a parent who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation; or
>
> (III) to a prevailing State educational agency or local educational agency against the attorney of a parent, or against the parent, if the parent's complaint or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation.

Neither at its inception nor at any time during the litigation was this cause of action frivolous, unreasonable, or without

---

[7](...continued)
decision, indicate that the only relief requested in the administrative proceeding was placement and funding for the 2004-2005 school year.  (Paper 3, parent ex. 1; ALJ decision at 21).  Moreover, in both their summary judgment motion and opposition memorandum, Plaintiffs request that this court place and fund Lenny at Ivymount for the 2004-2005 school year.  (Paper 6, at 31; paper 8, at 13).

foundation. There is case law within this district that supports the argument that reimbursement is not precluded where a child has never received special education from a public agency. *See Justin G.*, 148 F.Supp.2d at 587. The fact that Plaintiffs did not prevail during the administrative proceeding or in this court is not sufficient to establish frivolity or unreasonableness. Moreover, Defendants offer and the court can find no evidence that Plaintiffs presented their claim for any improper purpose. Accordingly, Defendants' request will be denied.

## V. Conclusion

For the foregoing reasons, summary judgment will be granted against Plaintiffs and in favor of Defendants. A separate Order will follow.

                                                /s/
                                        DEBORAH K. CHASANOW
                                        United States District Judge